IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 AUG 15  A 9: 21

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CINCINNATI INSURANCE          )
COMPANY                       )
                              )
    Plaintiff,                )
                              )
v.                            )    CV- 3: 06CV 733
                              )
JOSEPH DONALD PRATHER         )
                              )
    Defendant.                )
                              )

## COMPLAINT FOR DECLARATORY JUDGMENT

### PARTIES AND JURISDICTION

1.    The Plaintiff, The Cincinnati Insurance Company (hereinafter referred to as "CIC"), is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.  CIC is qualified and engaged in the business of providing liability insurance in the State of Alabama at all times referenced to herein.

2.    Defendant, Joseph Donald Prather ("Prather"), is a citizen of the State of Alabama and resides in Chambers County, Alabama.

3.    The United States District Court of the Middle District of Alabama has jurisdiction of this case by virtue of diversity of citizenship of the parties and the amount in controversy is in excess of $75,000.00 as outlined in 28 U.S.C. § 1332.

4.    Venue is appropriate pursuant to 28 U.S.C. § 1391.

### FACTUAL BACKGROUND

5.    CIC issued to Prather a policy of insurance known generally as Personal Auto Policy.  The policy number is A01 0134532 and the effective dates are March 26,

2005 through March 26, 2006. A certified copy of the policy is attached hereto and incorporated herein as if fully reproduced as Exhibit "A".

6.    At the time of the incident made basis if this suit, the following vehicles were covered automobiles under said policy

| | | |
|---|---|---|
| 1993 Chevrolet Van | VIN# | 1GCDG15Z8PF333497 |
| 1997 Ford Explorer | VIN# | 1FMDU32X6VUD31579 |
| 2003 Honda Accord LX | VIN# | 1HGCM56333A075579 |
| 1998 Nissan/Datsun Pickup | VIN# | 1N6ND06S7GC345261 |
| 1986 Ford F150 | VIN# | 1FTEF14N8GLA29352 |

7.    At the time of the incident made basis if this suit, Don Prather and Linda Prather were the named listed insureds.

8.    Tracy Swader is the daughter of the named listed insureds, Don Prather and Linda Prather.

9.    Jason Swader is married to Tracy Swader and therefore the son-in-law of the named listed insureds, Don Prather and Linda Prather.

10.    Jason Swader and Tracy Swader ("Swaders") sued Steven Bullard (" Bullard") and Cincinnati Insurance Company on or about April 18, 2006 in the Circuit Court of Chambers County, Alabama.

11.    Swaders allege that on or about February 3, 2006, that Swaders were passengers in a vehicle driven by Bullard.

12.    Swaders allege that due to Bullard's negligent and/or wanton conduct the automobile operated by Bullard, was involved in a single car accident.

13.    Swaders allege the automobile involved in the incident made basis of this suit is VIN#: 2G2FU22P4P2213516.

14.    Swaders allege at the time of the accident made the basis of this suit, Bullard, was an uninsured and/or underinsured motorist.

15.    The vehicle involved in the incident made basis of this suit was not a vehicle covered under the policy issued by CIC.

16.    The Swaders were not named insureds under the policy issued by CIC.

17.    At the time of the incident, made basis of this suit Jason Swader nor Tracy Swader had resided with the named insureds for at least seven years.

18.    However, the Swaders expect CIC to provide coverage, under Uninsured/Underinsured benefits of said policy, for the alleged damages arising from the alleged incident made basis of this suit.

19.    By virtue of these claims, a justiciable controversy arises concerning coverage.

20.    A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to said CIC insurance policy.

21.    CIC has filed the Declaratory Judgment Action seeking a determination of the parties' rights, duties, status and legal relationship under the policy of insurance issued by CIC to Don Prather and Linda Prather as it relates to coverage for 1) Tracy Swader's alleged damages from the alleged incident of February 3, 2006; and 2) Jason Swader's alleged damages from the alleged incident of February 3, 2006.

## **BASIS OF RELIEF REQUESTED**

22.    CIC's policy contains, among other things, the following terms, conditions, definitions, provisions and exclusions.  Obviously, many of the following are not directly pertinent to all of the issues in this case, but are included merely for context:

**PERSONAL AUTO POLICY**
**PROVISIONS**
**AGREEMENT**

In return for payment of the premium and subject to all the terms of this policy, "we" agree with "you" as fol-lows:

## DEFINITIONS

Throughout this policy, "you" and "your" refer to:

**1.** The named insured shown in the Declarations; and

**2.** The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

**1.** The end of 90 days following the spouse's change of residency;

**2.** The effective date of another policy listing the spouse as a named insured; or

**3.** The end of the policy period.

"We", "us" and "our" refer to the Company providing this insurance.
For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

**1.** Under a written agreement to that person; and

**2.** For a continuous period of at least 3 months.

Other words and phrases are defined as follows:

"Bodily injury" means bodily harm, sickness or disease, including death that results

therefrom. "Business" includes, but is not limited to, trade, profession or

occupation. "Collision" is defined in Part **D**.

"Covered person" is defined in Part **A**.

"Property damage" means physical injury to, destruction of or loss of use of tangible property that has been physically damaged.

"Nonowned auto" means a vehicle not owned by or furnished or available for the regular use of "you" or any "family member" while in the care, custody or control of a "covered person".

"Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household. This includes a ward or foster child.

"Occupying" means in, upon, getting in or out, getting on or off.

"Trailer" means a vehicle designed to be pulled by a:

**1.** Private passenger auto; or

**2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or

2. above.

"Your covered auto" means:

**1.** Any vehicle shown in the Declarations, including any owned by "your" living trust.

**2.** Any of the following types of vehicles on the date "you" or "your" living trust

becomes the owner:
    **a.** A private passenger auto; or

**b.** A pickup or van.

This Provision (**2.**) applies only if:

**a.** The vehicle "you" or "your" living trust acquires is not already shown in the Declarations;

**b.** "You" or "your" living trust acquires the vehicle during the policy period;

**c.** "You" ask "us" to insure it within 30 days after "you" or "your" living trust becomes the owner; and

**d.** With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle acquired by "you" or "your" living trust replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. "You" must ask "us" to insure a replacement vehicle within 30 days only if:

**a.** "You" wish to add or continue Coverage for Damage to "Your" Auto; or

**b.** It is a pickup or van used in any "business" or occupation, other than farming or ranching.

If the vehicle acquired by "you" or "your" living trust is in addition to any shown in the Declarations, it will have the broadest coverage "we" now provide for any vehicle shown in the Declarations.

If neither the vehicle being replaced or any other covered auto on "your" policy has Part D - Coverage For Damage To Your Auto, "we" will provide Collision and Other Than Collision coverage for the replacement or additional vehicle owned by "you" or "your" living trust subject to a $250 deductible for a period of 30 days after "you" or "your" living trust becomes the owner. If "you" do not notify "us" within 30 days after "you" or "your" living trust becomes the owner of "your" intention to add physical damage coverage for the acquired vehicle, this physical damage coverage will expire.

**3.** Any "trailer" "you" or "your" living trust own.

**4.** Any auto or "trailer" "you" or "your" living trust do not own while used as a temporary substitute for any other vehicle described in this definition of "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

• • • •

# UNINSURED MOTORISTS COVERAGE
# FOR BODILY INJURY AND PROPERTY DAMAGE
# SPLIT LIMITS

## ALABAMA

I. **PART C - UNINSURED MOTORISTS COVERAGE**

With respect to premium(s) shown in the Declarations, the following coverage is hereby added:

**INSURING AGREEMENT**

**A.** "We" will pay compensatory damages which a "covered person" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury":

   **a.** Sustained by a "covered person"; and

   **b.** Caused by an accident.

2. "Property damage" caused by an accident if the Schedule or Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorists Coverage applies. However, when both "bodily injury" and "property damage" Uninsured Motorists Coverage is afforded, only Items **1.**, **2.**, and **5.** of the definition of "uninsured motor vehicle" will apply to "property damage."

The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured motor vehicle".

With respect to coverage under Section **3.** of the definition of "uninsured motor vehicle", "we" will pay under this coverage only if **1.** or **2.** below applies:

1. The limits of liability under all applicable bodily injury liability bonds or policies have been ex-hausted by payment of judgments or settlements; or

2. A tentative settlement has been made between a "covered person" and a person(s) or organi-zation(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s) and "we":

   **a.** Have been given prompt written notice of such tentative settlement; and

   **b.** Advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "unin-sured motor vehicle" is binding on "us" unless "we":

1. Received reasonable notice of the pendency of the suit resulting in judgment; and

2. Had a reasonable opportunity to protect "our" interests in the suit.

However, if reasonable notice has not been given to "us", "we" have the option to accept the judg-ment in the suit as binding on "us".

**B.** "Covered person" as used in this Part means:

1. "You" or any "family member".

6

    **2.** Any other person "occupying" "your covered auto".

    **3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Motor Vehicle" as used in Part C:

    **1.** A self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus.

    **2.** A motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office.

    **3.** "Motor vehicle" does not include a trolly, streetcar, "trailer", railroad engine, railroad car, motor-ized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobilehome, vehicle traveling on treads or rails or any similar vehicle.

**D.** "Property Damage" as used in this endorsement means:

    **1.** Injury to or destruction of "your covered auto".

    **2.** Injury to or destruction of any property owned by a person listed in **1.** and **2.** of "'covered person" while contained in "your covered auto".

    **3.** Loss of use of damaged or destroyed property.

        "We" will pay up to $15 per day, to a maximum of $450, for such loss of use.

**E.** "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

    **1.** To which no liability bond or policy applies at the time of the accident.

    **2.** To which a liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of Alabama. For property damage liability, its amount of coverage available for payment to a "covered person" must be less than the limit of liability for this cover-age.

    **3.** For which the sum of the limits of liability under all bodily injury liability bonds or policies applica-ble at the time of the accident is not enough to pay the full amount the "covered person" is le-gally entitled to recover as damages. In this case the applicable limits for bodily injury liability must be equal to or greater than the minimum limit for bodily injury liability specified by the fi-nancial responsibility law of Alabama.

    **4.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

        **a.** "You" or any "family member",

        **b.** A vehicle which "you" or any "family member" are "occupying"; or c.

        "Your covered auto".

    **5.** To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

        a. Denies coverage; or

```
    b. Is or becomes insolvent.

6. For which liability coverage is afforded under this policy.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of "you" or any
   "family member" unless there is no liability coverage available under any
   policy other than this policy to respond for damages sustained by "you"
   or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle
   law, except a self-insurer which is or becomes insolvent and cannot
   provide the amounts required by that "motor vehicle" law.

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.
```

. . . .

23.    CIC avers that there is no coverage for Jason Swader or Tracy Swader for the subject incident under its policies.

a. Specifically, CIC argues that its policy of insurance covering Don Prather and Linda Prather does not provide coverage for Jason Swader and Tracy Swader because they are not a "Covered person" as defined in the Uninsured Motorist section of the policy.

b. The Uninsured Motorist section of the policy defines a "Covered person" as

1. "You" or an "family member".

2. "Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

c. "Family member" is defined as "a person related to 'you' by blood, marriage or adoption who is a resident of 'your' household. This includes a ward or foster child.

d. "You" and "your" a defined to refer to:

1. The named insured shown in the Declarations; and

2. The spouse if a resident of the same household

e. The named insured shown in the Declarations are Don Prather and Linda Prather.

f. Neither Jason Swader nor Tracy Swader were residents of Don Prather's or Linda Prather's household.

g. Neither Jason Swader nor Tracy Swader were occupying a covered auto.

h. CIC avers that is has complied with all the terms, conditions and provisions of its contract of insurance.

WHEREFORE, premises considered, CIC respectfully requests:

(1)    That this Honorable Court take jurisdiction of this cause;

(2)    That this Honorable Court Order, Adjudge and Decree that it is proper cause of action for declaratory judgment and there is a bona fide controversy between the parties as to their legal rights, duties, status and liabilities;

(3)    That the process of this Honorable Court be issued to each Defendant as provided by law and the rules of the Court and that the Defendant is required to plead or answer to this Complaint for declaratory judgment within the time required by law; and

(4)    CIC requests any such other, further and different relief to which it may be entitled and offers to do equity and further requests that if it be mistaken and any

special relief herein sought is denied that it requests such other, further or more general relief to which it may be entitled.

Jennifer T. Dewees, #ASB1265S35J
Attorney for The Cincinnati Insurance Company

2001 Park Place North
Suite 911
Birmingham, Alabama 35203
(205) 251-9958

Plaintiff's Address:
The Cincinnati Insurance Company
6200 South Gilmore Road
Fairfield, Ohio 45014-5141

**Please serve Defendant Via Special Process Server at:**
Don Prather and Linda Prather
2171 Co. Road 187
Lanett, AL 36863

### CERTIFICATE OF SERVICE

I, hereby, certify that I have sent the foregoing upon the following by United States Mail on this the _____ day of _August_ , 2006.

Timothy L. Dillard
Dillard & Associates, L.L.C.
Fourth Floor, Berry Building
2015 Second Avenue North
Birmingham, AL 35203
*Attorney for Jason Swader and Tracy Swader*

Steven Bullard
1405 16th Place
Valley, AL 36854

Respectfully Submitted,

Jennifer T. Dewees #ASB1265S35J

2001 Park Place North
Suite 911
Birmingham, Alabama 35203
(205) 251-9958
Jennifer_Dewees@staffdefense.com

Exhibit "A"



**THE CINCINNATI INSURANCE COMPANIES**

**THE**
# CINCINNATI INSURANCE COMPANY

**POLICY NUMBER**
**A01 0134532**

**Image** 1

## AUTO
## DECLARATIONS

**Policy Period: From 03/26/2005 To 03/26/2006**
12:01 a.m. Standard Time at the Address of the Named Insured

**Renewal**

A01 0134532
**Named Insured & Address**
Don Prather
Or Linda Prather
2171 COUNTY ROAD 187
LANETT, AL 36863-5723

**Please refer any questions to your agent:**
J Smith Lanier & Co
707 Avenue A
PO BOX 828
OPELIKA, AL 36803-0828
(334)749-3401
**Agency** 01050    **Producer**  Shirley A. Frost

County of CHAMBERS

| | |
|---|---|
| **Billing Method:** | **Direct Bill** |
| **Current Pay Plan:** | **Quarterly Pay** |
| | **$428** |
| **Remaining Installments:** | |
| 06/26/2005 | $427 |
| 09/26/2005 | $427 |
| 12/26/2005 | $427 |
| **Total Premium:** | **$1,709** |

THIS IS NOT A BILL. You will receive a separate invoice if a premium charge or return is due.

Insurance is provided where a premium or 'Included' is shown for the coverage.

**YOUR COVERED AUTOS**

| Veh | Ter | Year | Vehicle Description | Vehicle ID Number | Type Veh | Class | Stated Amount | Symbol / Rating Basis Value / Current Market Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 36 | 1993 | CHEVROLET CHEVY VAN | 1GCDG15Z8PF333497 | Van | 80222A | | 5 |
| 2 | 36 | 1997 | FORD EXPLORER | 1FMDU32X6VUD31579 | Priv Pass | 80212A | | 8 |
| 3 | 36 | 2003 | HONDA ACCORD LX | 1HGCM56333A075579 | Priv Pass | 81112A | | 11 |
| 4 | 36 | 1986 | NISSAN/DATSUN PICKUP | 1N6ND06S7GC345261 | Priv Pass | 81112A | | 8 |

**This is a true and certified copy of the Declarations page of the policy.**

By: *[signature]*
Daniel R. Walsh, Assistant Secretary
Regional Manager Casualty Claims
AGENCY COPY

DDA (8/01)

A01 0134532

1  of 3



**THE**
# CINCINNATI INSURANCE COMPANY

POLICY NUMBER
A01 0134532

Image 1

## AUTO
## DECLARATIONS

**Policy Period: From 03/26/2005 To 03/26/2006**
12:01 a.m. Standard Time at the Address of the Named Insured

Renewal

A01 0134532
**Named Insured & Address**
Don Prather
Or Linda Prather
2171 COUNTY ROAD 187
LANETT, AL 36863-5723

**Please refer any questions to your agent:**
J Smith Lanier & Co
707 Avenue A
PO BOX 828
OPELIKA, AL 36803-0828
(334)749-3401
**Agency** 01050    **Producer**   Shirley A. Frost

County of CHAMBERS

| | |
|---|---|
| **Billing Method:** | Direct Bill |
| **Current Pay Plan:** | Quarterly Pay |
| | **$428** |
| **Remaining Installments:** | |
| 06/26/2005 | $427 |
| 09/26/2005 | $427 |
| 12/26/2005 | $427 |
| **Total Premium:** | **$1,709** |

THIS IS NOT A BILL. You will receive a separate invoice if a premium charge or return is due.

Insurance is provided where a premium or 'Included' is shown for the coverage.

**YOUR COVERED AUTOS**

| Veh | Ter | Year | Vehicle Description | Vehicle ID Number | Type Veh | Class | Stated Amount | Symbol / Rating Basis Value / Current Market Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 36 | 1993 | CHEVROLET CHEVY VAN | 1GCDG15Z8PF333497 | Van | 80222A | | 5 |
| 2 | 36 | 1997 | FORD EXPLORER | 1FMDU32X6VUD31579 | Priv Pass | 80212A | | 8 |
| 3 | 36 | 2003 | HONDA ACCORD LX | 1HGCM56333A075579 | Priv Pass | 81112A | | 11 |
| 4 | 36 | 1986 | NISSAN/DATSUN PICKUP | 1N6ND06S7GC345261 | Priv Pass | 81112A | | 8 |

**This is a true and certified copy of the
Declarations page of the policy.**

By: *Darryl R. Walsh*

Daniel R. Walsh  Assistant Secretary
**Regional Manager Casualty Claims**
AGENCY COPY

DDA (8/01)

A01 0134532        1  of 3

# PERSONAL AUTO POLICY FA-4000
## TABLE OF CONTENTS

|  |  | Beginning on Page |
|---|---|---|
|  | **DECLARATION PAGE** |  |
|  | Your Name and Address |  |
|  | Your Auto(s) and / or Trailer(s) |  |
|  | Policy Period |  |
|  | Coverage and Amounts of Insurance |  |
|  | **AGREEMENT** | 1 |
|  | **DEFINITIONS** | 1 |
| **PART A** | **LIABILITY COVERAGE** | 2 |
|  | Insuring Agreement | 2 |
|  | Supplementary Payments | 3 |
|  | Exclusions | 3 |
|  | Limit of Liability | 5 |
|  | Out of State Coverage | 6 |
|  | Financial Responsibility Required | 6 |
|  | Other Insurance | 6 |
| **PART B** | **MEDICAL PAYMENTS COVERAGE** | 6 |
|  | Insuring Agreement | 6 |
|  | Exclusions | 7 |
|  | Limit of Liability | 7 |
|  | Other Insurance | 8 |
| **PART C** | **UNINSURED MOTORISTS COVERAGE** | 8 |
| **PART D** | **COVERAGE FOR DAMAGE TO YOUR AUTO** | 8 |
|  | Insuring Agreement | 8 |
|  | Transportation Expenses | 9 |
|  | Towing and Labor Costs Coverage | 9 |
|  | Exclusions | 10 |
|  | Limit of Liability | 11 |
|  | Payment of Loss | 11 |
|  | No Benefit to Bailee | 11 |
|  | Other Insurance | 11 |
|  | Appraisal | 11 |
| **PART E** | **DUTIES AFTER AN ACCIDENT OR LOSS** | 12 |
|  | General Duties | 12 |
|  | Additional Duties for Coverage for Damage to Your Auto | 12 |
| **PART F** | **GENERAL PROVISIONS** | 12 |
|  | Bankruptcy | 12 |
|  | Changes | 12 |
|  | Legal Action Against Us | 13 |
|  | Our Right to Recover Payment | 13 |
|  | Policy Period and Territory | 13 |
|  | Termination | 13 |
|  | Cancellation | 13 |
|  | Nonrenewal | 14 |
|  | Automatic Termination | 14 |
|  | Other Termination Provisions | 14 |
|  | Transfer of Your Interest In This Policy | 15 |
|  | Two or More Auto Policies | 15 |
|  | Fraud | 15 |
|  | Choice of Law | 15 |
|  | Insured's Representative Clause | 15 |

Your auto insurance policy is a legal contract between you and your insurance company.

READ YOUR POLICY CAREFULLY. The Table of Contents provides only a brief outline of some of the important features of your policy. Only the actual policy provisions will control coverage. The policy itself sets forth, in detail, the rights and obligations of both "you" and "your" insurance company. IT IS THEREFORE IMPORTANT YOU READ YOUR POLICY.

FA-4000 T (12/02)

# PERSONAL AUTO POLICY

## PROVISIONS

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, "we" agree with "you" as follows:

## DEFINITIONS

Throughout this policy, "you" and "your" refer to:

1.   The named insured shown in the Declarations; and

2.   The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1.   The end of 90 days following the spouse's change of residency;

2.   The effective date of another policy listing the spouse as a named insured; or

3.   The end of the policy period.

"We", "us" and "our" refer to the Company providing this insurance.

For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1.   Under a written agreement to that person; and

2.   For a continuous period of at least 3 months.

Other words and phrases are defined as follows:

"Bodily injury" means bodily harm, sickness or disease, including death that results therefrom.

"Business" includes, but is not limited to, trade, profession or occupation.

"Collision" is defined in Part **D**.

"Covered person" is defined in Part **A**.

"Property damage" means physical injury to, destruction of or loss of use of tangible property that has been physically damaged.

"Nonowned auto" means a vehicle not owned by or furnished or available for the regular use of "you" or any "family member" while in the care, custody or control of a "covered person".

"Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household. This includes a ward or foster child.

"Occupying" means in, upon, getting in or out, getting on or off.

"Trailer" means a vehicle designed to be pulled by a:

1.   Private passenger auto; or

2.   Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

"Your covered auto" means:

1.   Any vehicle shown in the Declarations, including any owned by "your" living trust.

2.   Any of the following types of vehicles on the date "you" or "your" living trust becomes the owner:

    **a.**   A private passenger auto; or

    **b.**   A pickup or van.

This Provision **(2.)** applies only if:

    **a.**   The vehicle "you" or "your" living trust acquires is not already shown in the Declarations;

    **b.**   "You" or "your" living trust acquires the vehicle during the policy period;

    **c.**   "You" ask "us" to insure it within 30 days after "you" or "your" living trust becomes the owner; and

    **d.**   With respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle acquired by "you" or "your" living trust replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. "You" must ask "us" to insure a replacement vehicle within 30 days only if:

    **a.**   "You" wish to add or continue Coverage for Damage to "Your" Auto; or

    **b.**   It is a pickup or van used in any "business" or occupation, other than farming or ranching.

If the vehicle acquired by "you" or "your" living trust is in addition to any shown in the Declarations, it will have the broadest coverage "we" now provide for any vehicle shown in the Declarations.

If neither the vehicle being replaced or any other covered auto on "your" policy has Part **D** - Coverage For Damage To Your Auto, "we" will provide Collision and Other Than Collision coverage for the replacement or additional vehicle owned by "you" or "your" living trust subject to a $250 deductible for a period of 30 days after "you" or "your" living trust becomes the owner. If "you" do not notify "us" within 30 days after "you" or "your" living trust becomes the owner of "your" intention to add physical damage coverage for the acquired vehicle, this physical damage coverage will expire.

**3.**   Any "trailer" "you" or "your" living trust own.

**4.**   Any auto or "trailer" "you" or "your" living trust do not own while used as a temporary substitute for any other vehicle described in this definition of "your covered auto" which is out of normal use because of its:

    **a.**   Breakdown;

    **b.**   Repair;

    **c.**   Servicing;

    **d.**   Loss; or

    **e.**   Destruction.

## PART A - LIABILITY COVERAGE

**INSURING AGREEMENT**

When a "covered person" becomes legally responsible because of an auto accident or for physical damage to a "nonowned auto", "we" will pay for:

**A.**   "Bodily injury";

**B.**   "Property damage";

**C.**   "Property damage" to a "nonowned auto":

    **1.**   When there is a written contract, "we" will pay for damage according to the terms of the contract;

    **2.**   In the absence of a written contract, "we" will pay in excess of any other applicable coverage.

Damages include prejudgment interest awarded against the "covered person". "We" will settle or defend, as "we" consider appropriate, any claim or suit asking for these damages. In addition to "our" limit of liability, "we" will pay all defense costs "we" incur. "Our" duty to settle or defend ends when "our" limit of liability for this coverage has been tendered for settlement or payment of judgment. "We" have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

"Covered person" as used in this policy means:

1.  "You" or any "family member" for the ownership, maintenance or use of any auto (including a motorhome, truck or motorcycle) or "trailer".

2.  "Your" Living Trust(s) (also known as Inter Vivos Trusts), including any natural person named as executor, administrator or trustee of "your" estate or living trust, but only with respect to "your covered auto", as defined in this policy.

3.  Any person using "your covered auto".

4.  For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5.  For any auto (including a motorhome, truck or motorcycle) or "trailer", other than "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of "you" or any "family member" for whom coverage is afforded under this Part. This Provision (5.) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

In addition to "our" limit of liability, "we" will pay on behalf of a "covered person":

1.  Up to $500 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2.  Premiums on appeal bonds and bonds to release attachments in any suit "we" defend.

3.  Interest accruing after a judgment is entered in any suit "we" defend. "Our" duty to pay interest ends when "we" offer to pay that part of the judgment which does not exceed "our" limit of liability for this coverage.

4.  Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at "our" request.

5.  The sum of $500 if "you" die within 30 days from "bodily injury" sustained as a direct result of "collision" or upset while riding in "your covered auto". If both "you" and "your" spouse die, $500 will be paid separately for each. Death must be caused solely through external, violent and accidental means. Payment will be made to the surviving spouse, the next of kin, or the legal representative of either, as the company may elect.

6.  Other reasonable expenses incurred at "our" request.

## EXCLUSIONS

A.  "We" do not provide Liability Coverage for any "covered person":

1.  Who expected or intended to cause "bodily injury" or "property damage" or whose intentional or criminal acts may have reasonably been expected to result in "bodily injury" or "property damage".

2.  For "property damage" to property owned or being transported by that "covered person".

3.  For "property damage" to property:

    a.  Rented to;

    b.  Used by; or

    c.  In the care of;

    that "covered person".

This Exclusion (A.3.) does not apply to "property damage" to:

    a.  A residence or private garage; or

    b.  Any of the following type vehicles not owned by or furnished or available for the regular use of "you" or any "family member":

        (1) Private passenger autos;

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.          **Page 3 of 15**

    **(2)** "Trailers";

    **(3)** Pickups, vans; or

    **(4)** Trucks less than 26,000 pounds gross vehicle weight.

**4.** For "bodily injury" to an employee of that "covered person" during the course of employment. This Exclusion **(A.4.)** does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

**5.** For that "covered person's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion **(A.5.)** does not apply to a share-the-expense car pool.

**6.** While employed or otherwise engaged in the "business" of:

    **a.** Selling;

    **b.** Repairing;

    **c.** Servicing;

    **d** Storing; or

    **e.** Parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion **(A.6.)** does not apply to the ownership, maintenance or use of "your covered auto" by:

    **a.** "You";

    **b.** Any "family member"; or

    **c.** Any partner, agent or employee of "you" or any "family member".

**7.** Maintaining or using any vehicle while that "covered person" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **(A.6.)**. This Exclusion **(A.7.)** does not apply to the maintenance or use of a:

    **a.** Private passenger auto;

    **b.** Pickup or van; or

    **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

**8.** Using a vehicle without a reasonable belief that person is entitled to do so.

**9.** For "bodily injury" or "property damage" for which that "covered person":

    **a.** Is an insured under a nuclear energy liability policy; or

    **b.** Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

    **a.** Nuclear Energy Liability Insurance Association;

    **b.** Mutual Atomic Energy Liability Underwriters; or

    **c.** Nuclear Insurance Association of Canada.

**10.** For bodily injury to "you" or any "family member".

**B.** "We" do not provide Liability Coverage for the ownership, maintenance or use of:

    **1.** Any motorized vehicle:

        **a.** Having fewer than four wheels (except for a motorcycle as owned, maintained or used by a "covered person"); or

        **b.** Which is designed mainly for use off public roads.

This Exclusion **(B.1.)** does not apply:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

While such vehicle is being used by a "covered person" in a medical emergency; or to any "trailer".

2. Any vehicle, other than "your covered auto", which is:

    a. Owned by "you"; or

    b. Furnished or available for "your" regular use.

3. Any vehicle, other than "your covered auto", which is:

    a. Owned by any "family member"; or

    b. Furnished or available for the regular use of any "family member".

However, this Exclusion (B.3.) does not apply to "you" while "you" are maintaining or "occupying" any vehicle which is:

    a. Owned by a "family member"; or

    b. Furnished or available for the regular use of a "family member".

4. Any motorized vehicle while:

    a. Operated in; or

    b. In practice or preparation for;

    any demolition, racing, or speed contest regardless of whether such contest is prearranged or organized.

C. "We" do not provide Liability Coverage for loss to any "nonowned auto" due to destruction or confiscation by governmental or civil authorities because "you" or any "family member":

1. Engaged in illegal activities; or

2. Failed to comply with Environmental Protection Agency or Department of Transportation standards.

## LIMIT OF LIABILITY

### A1. SPLIT LIMIT

If **A1.** Split limits of liability are shown in the Declarations, the following applies:

The limit of liability shown in the Declarations for each person for Bodily Injury Liability is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property Damage Liability is "our" maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most "we" will pay regardless of the number of:

1. "Covered persons";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

### A2. SINGLE LIMIT

If **A2.** Single Limits of liability are shown in the Declarations, the following applies:

The limit of liability shown in the Declarations for this coverage is "our" maximum limit of liability for all damages resulting from any one auto accident. This is the most "we" will pay regardless of the number of:

1. "Covered persons";

2. Claims made;

**3.** Vehicles or premiums shown in the Schedule or in the Declarations; or

**4.** Vehicles involved in the auto accident.

"We" will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change "our" total limit of liability.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

---

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, "we" will interpret "your" policy for that accident as follows:

If the state or province has:

**1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, "your" policy will provide the higher specified limit.

**2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the non-resident uses a vehicle in that state or province, "your" policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

---

**FINANCIAL RESPONSIBILITY REQUIRED**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

---

**OTHER INSURANCE**

If there is other applicable liability insurance "we" will pay only "our" share of the loss. "Our" share is the pro-portion that "our" limit of liability bears to the total of all applicable limits. However, any insurance "we" provide for a vehicle "you" do not own or a vehicle operated or used by any person other than "you" or any "family member" shall be excess over any other collectible insurance.

---

# PART B - MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

"We" will pay reasonable expenses incurred for necessary medical (including surgical, x-ray and dental serv-ices; prosthetic devices, eyeglasses and pharmaceuticals; and, necessary ambulance, hospital and profes-sional nursing services) and funeral services because of "bodily injury":

**1.** Caused by accident; and

**2.** Sustained by a "covered person".

"We" will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

"Covered person" as used in this Part means:

**1.** "You" or any "family member":

    **a.** While "occupying"; or

    **b.** As a pedestrian when struck by;

    a motor vehicle designed for use mainly on public roads or a "trailer" of any type.

**2.** Any other person while "occupying" "your covered auto".

## EXCLUSIONS

"We" do not provide Medical Payments Coverage for any person for "bodily injury":

1.  Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2.  Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(2.)** does not apply to a share-the-expense car pool.

3.  Sustained while "occupying" any vehicle located for use as a residence or premises.

4.  Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5.  Sustained while "occupying" or, when struck by, any vehicle (other than "your covered auto") which is:

    **a.**  Owned by "you"; or

    **b.**  Furnished or available for "your" regular use.

6.  Sustained while "occupying" or, when struck by, any vehicle (other than "your covered auto") which is:

    **a.**  Owned by any "family member"; or

    **b.**  Furnished or available for the regular use of any "family member".

However, this Exclusion **(6.)** does not apply to "you".

7.  Sustained while "occupying" a vehicle without a reasonable belief that person is entitled to do so.

8.  Sustained while "occupying" a vehicle when it is being used in the "business" of a "covered person". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

    **a.**  Private passenger auto;

    **b.**  Pickup or van that "you" own; or

    **c.**  "Trailer" used with a vehicle described in **a.** or **b.** above.

9.  Caused by or as a consequence of:

    **a.**  Discharge of a nuclear weapon (even if accidental);

    **b.**  War (declared or undeclared);

    **c.**  Civil war;

    **d.**  Insurrection; or

    **e.**  Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    **a.**  Nuclear reaction;

    **b.**  Radiation; or

    **c.**  Radioactive contamination.

11. Sustained "occupying" any motorized vehicle while:

    **a.**  Operated in; or

    **b.**  In practice or preparation for;

    any demolition, racing, or speed contest regardless of whether such contest is prearranged or organized.

## LIMIT OF LIABILITY

The limit of liability shown in the Declarations for this coverage is "our" maximum limit of liability for each person injured in any one accident. This is the most "we" will pay regardless of the number of:

1.  "Covered persons";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the accident.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or any uninsured or underinsured motorists coverage provided by endorsement to this policy.

No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part **A** or uninsured or underinsured motorists coverage provided by endorsement to this policy.

---

### OTHER INSURANCE

### COVERAGE B1. REGULAR (FULL) MEDICAL PAYMENTS

If there is other applicable auto medical payments insurance, "we" will pay only "our" share of the loss. "Our" share is the proportion "our" limit of liability bears to the total of all applicable limits. However, any insurance "we" provide with respect to a vehicle "you" do not own or a vehicle operated or used by any person other than "you" or any "family member" shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

### COVERAGE B2. MODIFIED (LIMITED) OR EXCESS MEDICAL PAYMENTS

If there is other applicable insurance for medical or funeral services (including but not limited to other auto Medical Payments insurance; Homeowners Liability insurance for medical exposures; individual, blanket or group accident, disability or hospitalization insurance; medical or surgical reimbursement plan; or Workers' Compensation or disability benefits law), this insurance does not apply except as excess over that other insurance.

---

# PART C - UNINSURED MOTORISTS COVERAGE

If purchased, refer to respective state uninsured motorist coverage endorsement.

---

# PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

"We" will pay for direct and accidental loss to "your covered auto", including its equipment, minus any applicable deductible shown in the Declarations. "We" will pay for loss to "your covered auto" caused by:

1.  Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

2.  "Collision" only if the Declarations indicate Collision Coverage is provided for that auto.

If there is a loss to a "nonowned auto" not otherwise covered under Part **A** - Liability Coverage, Insuring Agreement **C.**, above, "we" will provide the broadest coverage applicable to any "your covered autos" shown in the Declarations. However, this coverage does not apply to any vehicle weighing in excess of 26,000 pounds.

"Collision", as used throughout this policy, means the upset, or collision of "your covered auto" with another object. However, loss caused by the following are not considered "collision":

1.  Missiles or falling objects;

2.  Fire;

3.  Theft or larceny;

4.  Explosion or earthquake;

5.  Windstorm;

6.  Hail, water or flood;

7.   Malicious mischief or vandalism;

8.   Riot or civil commotion;

9.   Contact with bird or animal; or

10.  Breakage of glass.

If breakage of glass is caused by a "collision", "you" may elect to have it considered a loss caused by "collision".

With respect to vehicles for which it is shown in the Declarations that Collision Coverage is provided in excess of a deductible amount stated in the Declarations, this deductible amount shall not apply:

1.   To loss caused by "collision" with another auto insured by "us" including an auto owned by "you"; or

2.   Providing all of the following conditions exists:

    a.   Loss to "your covered auto" is greater than the deductible amount; and

    b.   The owner or operator of the other auto has been identified; and

    c.   The owner or operator of the other auto is legally liable for the loss to "your covered auto"; and

    d.   A valid property damage liability insurance policy is in force at the time of the accident with respect to the person or organization legally responsible for the loss to "your covered auto".

Loss to awnings or cabanas is covered subject to a $50 deductible or the deductible shown in the declarations, whichever is greater.

---

## TRANSPORTATION EXPENSES

In addition, "we" will pay, without application of a deductible, up to $20 per day, to a maximum of $600, for:

1.   Temporary transportation expenses incurred by "you" in the event of a loss to "your covered auto". "We" will pay for such expenses if the loss is caused by:

    a.   Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for that auto.

    b.   "Collision" only if the Declarations indicate Collision Coverage is provided for that auto.

2.   Loss of use expenses for which "you" become legally responsible in the event of loss to a "nonowned auto". "We" will pay for the loss of use expenses if the loss is caused by:

    a.   Other than "collision" only if the Declarations indicate Other Than Collision Coverage is provided for any "your covered auto".

    b.   "Collision" only if the Declarations indicate Collision Coverage is provided for any "your covered auto".

If the loss is caused by a total theft of "your covered auto" or a "nonowned auto", "we" will pay only expenses incurred during the period ending when "your covered auto" or the "nonowned auto" is returned to use or "we" pay for its loss.

If the loss is caused by other than theft of "your covered auto" or a "nonowned auto", "we" will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

"Our" payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "nonowned auto".

---

## TOWING AND LABOR COSTS COVERAGE

"We" will pay towing and labor costs incurred each time "your covered auto" or any "nonowned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a "nonowned auto" is disabled, "we" will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. "We" will pay only for labor performed at the place of disablement.

## EXCLUSIONS

"We" will not pay for:

1.  Loss to "your covered auto" or any "nonowned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2.  Damage due and confined to:

    a.  Wear and tear;

    b.  Freezing;

    c.  Mechanical or electrical breakdown or failure (other than burning of wiring); or

    d.  Road damage to tires.

    This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto".

3.  Loss due to or as a consequence of:

    a.  Radioactive contamination;

    b.  Discharge of any nuclear weapon (even if accidental);

    c.  War (declared or undeclared);

    d.  Civil war;

    e.  Insurrection; or

    f.  Rebellion or revolution.

4.  Loss by theft to:

    a.  Scanning monitor receivers; or

    b.  Personal computers.

    Coverage for loss by theft is limited to $500 for all other items of electronic equipment not permanently installed in "your covered auto". Coverage applies only to items specifically designed for use in an automobile. This coverage is excess over any other valid and collectible insurance.

5.  Loss to devices for the detection of police speed monitoring instruments.

6.  Loss to tapes, records, discs or other media for use with equipment designed for the reproduction of sound and/or video.

7.  Loss to a camper body or "trailer" not shown in the Declarations. This Exclusion (7.) does not apply to a camper body or "trailer" "you":

    a.  Acquire during the policy period; and

    b.  Ask "us" to insure within 30 days after "you" become the owner.

8.  Loss to any exterior custom furnishings or equipment, except a nonpermanently attached cap, cover or bedliner in or upon any pickup or van. Exterior custom furnishings or equipment include but are not limited to custom murals, paintings, or other decals or graphics.

9.  Loss to any interior custom furnishings or equipment with an accumulated value in excess of $500 in or upon any pick-up or van. Interior custom furnishings or equipment include but are not limited to:

    a.  Special carpeting and insulation, furniture, bars or television receivers;

    b.  Facilities for cooking and sleeping;

    c.  Height-extending roofs.

10. Loss to "your covered auto" due to destruction or confiscation by governmental or civil authorities because "you" or any "family member":

    a.  Engaged in illegal activities; or

    b.  Failed to comply with Environmental Protection Agency or Department of Transportation standards.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

This Exclusion **(10.)** does not apply to the interests of Loss Payees in "your covered auto".

11. Loss to any motorized vehicle, while located inside a facility designed for racing; or, while:

    **a.** Operated in; or

    **b.** In practice or preparation for;

    any demolition, racing, or speed contest regardless of whether such contest is prearranged or organized.

---

## LIMIT OF LIABILITY

"Our" limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property; or

3. Stated amount shown in the Declarations.

If a repair or replacement results in better than like kind or quality, "we" will not pay for the amount of the betterment.

"Our" payment for loss will be reduced by any applicable deductible shown in the Declarations.

---

## PAYMENT OF LOSS

"We" may pay for loss in money or repair or replace the damaged or stolen property. "We" may, at "our" expense, return any stolen property to:

1. "You"; or

2. The address shown in this policy.

If "we" return stolen property "we" will pay for any damage resulting from the theft. "We" may keep all or part of the property at an agreed or appraised value.

If "we" pay for loss in money, "our" payment will include the applicable sales tax for the damaged or stolen property.

---

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

---

## OTHER INSURANCE

If other sources of recovery also cover the loss "we" will pay only "our" share of the loss. "Our" share is the proportion "our" limit of liability bears to the total of all applicable limits. However, any insurance "we" provide with respect to a "nonowned auto" shall be excess over any other collectible source of recovery.

---

## APPRAISAL

If "we" and "you" do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

"We" do not waive any of "our" rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

**GENERAL DUTIES**

"We" have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

"We" must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

A person seeking any coverage must:

1.   Cooperate with "us" in the investigation, settlement or defense of any claim or suit.

2.   Promptly send "us" copies of any notices or legal papers received in connection with the accident or loss.

3.   Submit, as often as "we" reasonably require:

   a.   To physical exams by physicians "we" select. "We" will pay for these exams.

   b.   To examination under oath and subscribe the same.

4.   Authorize "us" to obtain:

   a.   Medical reports; and

   b.   Other pertinent records.

5.   Submit a proof of loss when required by "us".

---

**ADDITIONAL DUTIES FOR COVERAGE FOR DAMAGE TO YOUR AUTO**

A person seeking Coverage for Damage to Your Auto must also:

1.   Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. "We" will pay reasonable expenses incurred to do this.

2.   Promptly notify the police if "your covered auto" is stolen.

3.   Permit "us" to inspect and appraise the damaged property before its repair or disposal.

---

## PART F - GENERAL PROVISIONS

**BANKRUPTCY**                                              •

Bankruptcy or insolvency of the "covered person" shall not relieve "us" of any obligations under this policy.

---

**CHANGES**

A.   This policy contains all the agreements between "you" and "us". Its terms may not be changed or waived except by endorsement issued by "us". If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of change.

B.   If there is a change to the information used to develop the policy premium, "we" may adjust "your" premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1.   The number, type or use classification of insured vehicles;

   2.   Operators using insured vehicles, newly licensed drivers in the household, any drivers added to "your" household;

   3.   The place of principal garaging of insured vehicles;

   4.   Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, "we" will make the premium adjustment in accordance with "our" manual rules.

**C.** If, within 45 days prior to the beginning of this policy or during the policy period, "we" make any changes to any forms or endorsements of this policy for which there is currently no separate premium charge, and that change provides more coverage than this policy, the change will be considered as included until the end of the current policy period. "We" will make no additional premium charge for this additional coverage during the interim.

---

## LEGAL ACTION AGAINST US

No legal action may be brought against "us" until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against "us" until:

**1.** "We" agree in writing that the "covered person" has an obligation to pay; or

**2.** The amount of that obligation has been finally determined by judgment after trial.

No person or organization has any right under this policy to bring "us" into any action to determine the liability of a "covered person".

---

## OUR RIGHT TO RECOVER PAYMENT

**A.** If "we" make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, "we" shall be subrogated to that right.

That person shall do:

**1.** Whatever is necessary to enable "us" to exercise "our" rights; and

**2.** Nothing after loss to prejudice them.

However, "our" rights in this Paragraph **(A.)** do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that person is entitled to do so.

**B.** If "we" make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

**1.** Hold in trust for "us" the proceeds of the recovery; and

**2.** Reimburse "us" to the extent of "our" payment.

---

## POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses which occur:

**1.** During the policy period as shown in the Declarations; and

**2.** Within the policy territory.

The policy territory is:

**1.** The United States of America, its territories or possessions;

**2.** Puerto Rico; or

**3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

---

## TERMINATION

## CANCELLATION

This policy may be cancelled during the policy period as follows:

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

1.  The named insured shown in the Declarations may cancel by:

    a.  Returning this policy to "us"; or

    b.  Giving "us" advance written notice of the date cancellation is to take effect.

2.  "We" may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    a.  At least 10 days notice:

        (1)  If cancellation is for nonpayment of premium; or

        (2)  If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

    b.  At least 20 days notice in all other cases.

3.  After this policy is in effect for 60 days, or if this is a renewal or continuation policy, "we" will cancel only:

    a.  For nonpayment of premium; or

    b.  If "your" driver's license or that of:

        (1)  Any driver who lives with "you"; or

        (2)  Any driver who customarily uses "your covered auto";

        has been suspended or revoked.  This must have occurred:

        (1)  During the policy period; or

        (2)  Since the last anniversary of the original effective date if the policy period is other than 1 year.

    c.  If the policy was obtained through material misrepresentation.

**NONRENEWAL**

If "we" decide not to renew or continue this policy, "we" will mail notice to the named insured shown in the Declarations at the address shown in this policy.  Notice will be mailed at least 30 days before the end of the policy period.  If the policy period is other than 1 year, "we" will have the right not to renew or continue the policy at the end of the current policy term.

**AUTOMATIC TERMINATION**

If "we" offer to renew or continue and "you" or "your" representative do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required renewal or continuation premium when due shall mean that "you" have not accepted "our" offer.

If "you" obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**OTHER TERMINATION PROVISIONS**

1.  If the law in effect in "your" state at the time this policy is issued, renewed or continued:

    a.  Requires a longer notice period;

    b.  Requires a special form of or procedure for giving notice; or

    c.  Modifies any of the stated termination reasons;

    "we" will comply with those requirements.

2.  "We" may deliver any notice instead of mailing it.  Proof of mailing of any notice shall be sufficient proof of notice.

3.  If this policy is cancelled, "you" may be entitled to a premium refund.  If so, "we" will send "you" the refund.  The premium refund, if any, will be computed according to "our" manuals.  However, making or offering to make the refund is not a condition of cancellation.

4.  The effective date of cancellation stated in the notice shall become the end of the policy period.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

"Your" rights and duties under this policy may not be assigned without "our" written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to "you" by "us" apply to the same accident, the maximum limit of "our" liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## FRAUD

"We" do not provide coverage for any "covered person" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## CHOICE OF LAW

It is understood and agreed this policy and all of its terms shall be construed and interpreted in conformity with the laws of the state in which it is issued.

## INSURED'S REPRESENTATIVE CLAUSE

By acceptance of this policy "you" and any other "covered person" agree the first Named Insured listed in the Declarations will act on both "your" and their behalf with respect to:

1. The acceptance of endorsements or other policy modifications; and

2. The giving or receiving of any other notice provided for in this policy.

Further, by acceptance of this policy, "you" and any other "covered person" agree to accept and be bound by any actions taken by the first Named Insured with regard to **1.** and **2.**, above.

All other terms and conditions of this policy remain unchanged.



# THE
# CINCINNATI INSURANCE COMPANIES

THE CINCINNATI INSURANCE COMPANY      THE CINCINNATI INDEMNITY COMPANY
THE CINCINNATI CASUALTY COMPANY      THE CINCINNATI LIFE INSURANCE COMPANY

**Mailing Address:**      **P.O. BOX 145496**
**CINCINNATI, OHIO 45250-5496**

# NOTICE OF PRIVACY PRACTICES

**OUR PRIVACY PLEDGE**

You have received this notice because you have applied for or purchased a policy, product, or service from one of our family of companies. We believe that information personal to you should be respected and protected. For this reason, we are committed to protecting your personal information and using it only as appropriate to provide you with the best possible service, products and opportunities. This privacy notice describes our information practices and policies. It applies to our relationship with you if you are an individual who inquires about or obtains products or services from us for personal, family or household purposes.

**INFORMATION WE COLLECT**

In order to provide our products or services, we may collect personal information about you from a variety of sources, including:

- information that comes from you during the application process
- information about you from our affiliates, your independent insurance agent, governmental entities, consumer reporting agencies and other sources
- with your prior written consent, a medical professional who has treated you or members of your family

The type of information that we collect depends on the product or service requested, but may include:

- credit history
- motor vehicle reports
- inspections on your property
- claims history
- information concerning your previous insurance policies
- information to properly investigate and resolve any claims

**INFORMATION WE DISCLOSE TO THIRD PARTIES**

**We do not sell your personal information to anyone.** We do not disclose your personal information to third parties - people and companies that are not affiliated with us - for their own marketing purposes. For this reason, no "opt-out" is required. If we share some personal information about you with third parties without your specific authorization, it is to provide you with products and services that you request or expect from us, and as otherwise permitted by law.

For example, we may disclose the personal information we collect (as described above) as necessary to:

- service your policy, lease or account
- investigate and pay claims
- comply with state and federal regulatory requests or demands
- process other transactions that you request

MI1659 (5/04)      **Page 1 of 2**

To whom we make such disclosures depends on the product or service requested but may include:

- your independent insurance agent
- insurance regulators
- reinsurance companies
- consumer-reporting agencies
- the Medical Information Bureau
- your mortgage or premium finance company
- insurance adjusters

We also may disclose personal information about you to companies that perform marketing services on our behalf or to other financial service providers with which we have joint marketing agreements. If information is disclosed, it will not result in telemarketing or direct mail marketing.

## INFORMATION WE SHARE WITHIN OUR CORPORATE FAMILY

In order to best serve you, we may share information about our experiences and transactions with you within our family of companies. Such information may include your payment or claims history or the types of insurance coverages you purchase from us.

## INFORMATION SECURITY

We restrict access to personal information about you to those employees who need to know that information in order to provide products and services to you. We maintain physical, electronic and procedural safeguards to guard your personal information.

## A SPECIAL WORD ABOUT OUR INSURANCE INFORMATION PRACTICES

The information in this section applies to you only if you applied for or purchased an insurance product from us for personal, family or household purposes. This section is intended to supplement, but not replace, the other information contained in this Notice of Privacy Practices.

You have the right to access the personal information that we collect about you in connection with your insurance transactions with us. If you believe that any of that information is in error, you have the right to request us to correct it. Send your written request, including your policy number and the information about which you are concerned, to the address listed below.

If you would like a more detailed notice regarding our insurance information practices and your information privacy rights, please contact us at the address or phone number given below.

## ONGOING ACCESS TO OUR PRIVACY POLICY

We will provide a notice of our privacy policy annually, as long as you have a continuing customer relationship with us. This policy may change from time to time, but you can always review our current policy by visiting our Web site at www.cinfin.com or by contacting us at:

> The Cincinnati Insurance Companies
> Attn: Staff Underwriting - Privacy
> P.O. Box 145496
> Cincinnati, Ohio 45250-5496
> 1-888-744-2170 (toll free) or
> 1-513-870-2000

***For information concerning our online privacy policy, please visit our Web site at*** www.cinfin.com.

## THE CINCINNATI FINANCIAL CORPORATION FAMILY

This privacy notice applies to and is provided on behalf of all of the companies in the Cincinnati Financial Corporation family of companies. These companies are solely financial services providers - insurance companies and a leasing company:

- Cincinnati Financial Corporation
- The Cincinnati Insurance Company
- The Cincinnati Casualty Company
- The Cincinnati Indemnity Company
- The Cincinnati Life Insurance Company
- CFC Investment Company

# UNINSURED MOTORISTS COVERAGE
# FOR BODILY INJURY AND PROPERTY DAMAGE
# SPLIT LIMITS
# ALABAMA

**I.    PART C - UNINSURED MOTORISTS COVERAGE**

With respect to premium(s) shown in the Declarations, the following coverage is hereby added:

**INSURING AGREEMENT**

**A.**    "We" will pay compensatory damages which a "covered person" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

    **1.**    "Bodily injury":

        **a.**    Sustained by a "covered person"; and

        **b.**    Caused by an accident.

    **2.**    "Property damage" caused by an accident if the Schedule or Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorists Coverage applies. However, when both "bodily injury" and "property damage" Uninsured Motorists Coverage is afforded, only Items **1., 2.,** and **5.** of the definition of "uninsured motor vehicle" will apply to "property damage."

The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the "uninsured motor vehicle".

With respect to coverage under Section **3.** of the definition of "uninsured motor vehicle", "we" will pay under this coverage only if **1.** or **2.** below applies:

    **1.**    The limits of liability under all applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

    **2.**    A tentative settlement has been made between a "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s) and "we":

        **a.**    Have been given prompt written notice of such tentative settlement; and

        **b.**    Advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on "us" unless "we":

    **1.**    Received reasonable notice of the pendency of the suit resulting in judgment; and

    **2.**    Had a reasonable opportunity to protect "our" interests in the suit.

However, if reasonable notice has not been given to "us", "we" have the option to accept the judgment in the suit as binding on "us".

**B.**    "Covered person" as used in this Part means:

    **1.**    "You" or any "family member".

    **2.**    Any other person "occupying" "your covered auto".

    **3.**    Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.**    "Motor vehicle" as used in Part **C** means:

    **1.**    A self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. A motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office.

3. "Motor vehicle" does not include a trolly, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobilehome, vehicle traveling on treads or rails or any similar vehicle.

D. "Property Damage" as used in this endorsement means:

1. Injury to or destruction of "your covered auto".

2. Injury to or destruction of any property owned by a person listed in **1.** and **2.** of "covered person" while contained in "your covered auto".

3. Loss of use of damaged or destroyed property.

   "We" will pay up to $15 per day, to a maximum of $450, for such loss of use.

E. "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of Alabama. For property damage liability, its amount of coverage available for payment to a "covered person" must be less than the limit of liability for this coverage.

3. For which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is not enough to pay the full amount the "covered person" is legally entitled to recover as damages. In this case the applicable limits for bodily injury liability must be equal to or greater than the minimum limit for bodily injury liability specified by the financial responsibility law of Alabama.

4. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

   a. "You" or any "family member",

   b. A vehicle which "you" or any "family member" are "occupying"; or

   c. "Your covered auto".

5. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

6. For which liability coverage is afforded under this policy.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of "you" or any "family member" unless there is no liability coverage available under any policy other than this policy to respond for damages sustained by "you" or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent and cannot provide the amounts required by that "motor vehicle" law.

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

**EXCLUSIONS**

A. "We" do not provide Uninsured Motorists Coverage for "property damage" or "bodily injury" sustained by any person:

1.  If that person or the legal representative settles the bodily injury claim without "our" consent. However, this Exclusion **(A.1.)** does not apply to Section **3.** of the definition of "uninsured motor vehicle".

2.  While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This Exclusion **(A.2.)** does not apply to a share-the-expense car pool.

3.  While operating or occupying a motor vehicle without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked or never issued be held to have a reasonable belief that he or she is entitled to operate a motor vehicle.

4.  For the first $250 of the amount of "property damage" to the property of each "covered person" as the result of any one accident. This exclusion does not apply if "your covered auto" is legally parked and unoccupied when involved in an accident with an "uninsured motor vehicle". This exclusion does not apply if the Declarations indicates that Collision Coverage is provided for "your covered auto" and the damage exceeds $200.

5.  For the first $250 of the amount of "property damage" to the property of a "covered person" as the result of any one accident. This exclusion does not apply if:

    a.  "Your covered auto" is legally parked and unoccupied while involved in an accident with an "uninsured motor vehicle";

    b.  The Declarations of this policy indicates Collision Coverage is provided for "your covered auto" and the damage to "your covered auto" exceeds $200; or

    c.  "You" elect to have this loss paid under Collision Coverage due to inadequate limits of liability for "property damage" caused by an "uninsured motor vehicle" and the damage to "your covered auto" exceeds $200, in which case, any Collision deductible applicable to the damage to "your covered auto" will be waived.

**B.**  This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1.  Workers' compensation law; or

2.  Disability benefits law.

## LIMIT OF LIABILITY

**A.**  Except as provided in **B.** below:

1.  When there is only one insured vehicle:

    a.  The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, due to or arising out of "bodily injury" sustained by any one person for this coverage in any one accident; and

    b.  Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one accident.

2.  When there is more than one insured vehicle:

    a.  And the "covered person" was "occupying" "your covered auto" at the time of the accident:

        (1)  The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to that "your covered auto", plus the sum of the highest limits of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any other of "your covered autos" up to a maximum of two additional limits, is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, due to or arising out of "bodily injury" sustained by any one person for this coverage in any one accident; and

        (2)  Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to that "your covered auto", plus the sum of the highest limits of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any other of "your covered autos" up

to a maximum of two additional limits is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one accident;

**b.** And the "covered person" was not "occupying" one of "your covered autos" at the time of the accident:

    **(1)** The sum of the highest limits of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any of "your covered autos" up to a maximum of three limits is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, due to or arising out of "bodily injury" sustained by any one person for this coverage in any one accident; and

    **(2)** Subject to this limit for each person, the sum of the highest limits of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of "your covered autos" up to a maximum of three limits is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one accident.

This is the most "we" will pay regardless of the number of:

**1.** Policies involved;

**2.** "Covered persons";

**3.** Vehicles or premiums shown in the Declarations;

**4.** Vehicles involved in the accident; or

**5.** Claims made.

**B.** If Uninsured Motorists Coverage is payable because Liability Coverage under Part **A** is excluded for damages sustained by "you" or any "family member":

**1.** When there is only one insured vehicle:

    **a.** That part of the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person that does not exceed the limits specified in the Alabama Motor Vehicle Safety Responsibility Act, is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, due to or arising out of "bodily injury" sustained by any one person for this coverage in any one accident; and

    **b.** Subject to this limit of each person, that part of the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident that does not exceed the limits specified in the Alabama Motor Vehicle Safety Responsibility Act, is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one accident.

**2.** When there is more than one insured vehicle:

    **a.** The sum of that part of the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any of "your covered autos" that does not exceed the limits specified in the Alabama Motor Vehicle Safety Responsibility Act up to a maximum of three limits, is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, due to or arising out of "bodily injury" sustained by any one person for this coverage in any one accident; and

    **b.** Subject to this limit for each person, the sum of that part of limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of "your covered autos" that does not exceed the limits specified in the Alabama Motor Vehicle Safety Responsibility Act up to a maximum of three limits, is "our" maximum limit of liability for all damages due to or arising out of "bodily injury" resulting from any one accident.

This is the most "we" will pay regardless of the number of:

**1.** Policies involved;

**2.** "Covered persons";

**3.** Vehicles or premiums shown in the Declarations;

**4.** Vehicles involved in the accident; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

5.  Claims made.

C.  No one will be entitled to receive duplicate payments for the same elements of loss, under this coverage and Part **A** or Part **B** of this policy.

D.  "We" will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E.  "We" will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1.  Workers' compensation law; or

2.  Disability benefits law.

**OTHER INSURANCE**

If there is other applicable similar insurance, "we" will pay only "our" share of the loss.  "Our" share is the proportion that "our" limit of liability bears to the total of all applicable limits.

If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy.  However, any insurance "we" provide with respect to a vehicle "you" do not own shall be excess over any other collectible insurance.

## ARBITRATION

**THE ARBITRATION PROVISION WILL NOT APPLY IF LEGAL ACTION HAS BEEN COMMENCED BY THE "COVERED PERSON" AGAINST THE OWNER OR OPERATOR OF AN "UNINSURED MOTOR VEHICLE".**

**IF "WE" AND A "COVERED PERSON" DO NOT AGREE:**

1.  **WHETHER THAT "COVERED PERSON" IS LEGALLY ENTITLED TO RECOVER DAMAGES; OR**

2.  **AS TO THE AMOUNT OF DAMAGES WHICH ARE RECOVERABLE BY THAT "COVERED PERSON";**

    **FROM THE OWNER OR OPERATOR OF AN "UNINSURED MOTOR VEHICLE" THEN THE MATTER MAY BE SETTLED BY ARBITRATION.  HOWEVER, DISPUTES CONCERNING COVERAGE UNDER THIS PART MAY NOT BE ARBITRATED.  THE "COVERED PERSON" AND "WE", MUST MUTUALLY AGREE TO ARBITRATE THE DISAGREEMENTS.  IF THE "COVERED PERSON" AND "WE" DO NOT AGREE TO ARBITRATE, THEN THE DISAGREEMENT WILL BE RESOLVED IN A COURT OF COMPETENT JURISDICTION.**

    **IF ARBITRATION IS USED, EACH PARTY WILL SELECT AN ARBITRATOR.  THE TWO ARBITRATORS WILL SELECT A THIRD.  IF THEY CANNOT AGREE WITHIN 30 DAYS, EITHER MAY REQUEST THAT SELECTION BE MADE BY A JUDGE OF A COURT HAVING JURISDICTION.  EACH PARTY WILL:**

1.  **PAY THE EXPENSES IT INCURS; AND**

2.  **BEAR THE EXPENSES OF THE THIRD ARBITRATOR EQUALLY.**

    **UNLESS BOTH PARTIES AGREE OTHERWISE, ARBITRATION WILL TAKE PLACE IN THE COUNTY IN WHICH THE "COVERED PERSON" LIVES.  LOCAL RULES OF LAW AS TO PROCEDURE AND EVIDENCE WILL APPLY.  A DECISION AGREED TO BY TWO OF THE ARBITRATORS WILL DETERMINE:**

1.  **WHETHER THE "COVERED PERSON" IS LEGALLY ENTITLED TO RECOVER DAMAGES; AND**

2.  **THE AMOUNT OF DAMAGES.  THIS APPLIES ONLY IF THE AMOUNT DOES NOT EXCEED THE MINIMUM LIMIT FOR BODILY INJURY LIABILITY SPECIFIED BY THE FINANCIAL RESPONSIBILITY LAW OF THE STATE IN WHICH "YOUR COVERED AUTO" IS PRINCIPALLY GARAGED.  IF THE AMOUNT**

**EXCEEDS THAT LIMIT, EITHER PARTY MAY DEMAND THE RIGHT TO A TRIAL. THIS DEMAND MUST BE MADE WITHIN 60 DAYS OF THE ARBI-TRATORS' DECISION. IF THIS DEMAND IS NOT MADE, THE AMOUNT OF DAMAGES AGREED TO BY THE ARBITRATORS WILL NOT BE BINDING.**

**ADDITIONAL DUTY**

Promptly notify "us" in writing of a tentative settlement between the "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the insurer or legal representative of such person(s) or organization(s) and allow "us" 30 days to advance payment to that "covered person" in an amount equal to the tentative settlement, to preserve "our" rights against all responsible parties.

## II.  General Provisions

Part **F** is amended as follows:

**A.** The following is added to the **Our Right to Recover Payment** provision:

**OUR RIGHT TO RECOVER PAYMENT**

**a.** If "we" make payment under this policy and the person to or for whom payment was made has a right to recover from another, "we" shall be subrogated to that right.

The person to or for whom payment was made shall do:

**1.** Whatever is necessary to enable "us" to exercise "our" rights; and

**2.** Nothing after loss to prejudice them.

However, "our" rights do not apply under Paragraph **A.** with respect to coverage under Section **3.** of the definition of "uninsured motor vehicle" for Uninsured Motorist Coverage is "we":

**1.** Have been given prompt written notice of a tentative settlement between a "covered person" and a person(s) or organization(s) who may be legally responsible for the accident, or the in-surer of legal representative of such person(s) or organization(s); and

**2.** Fail to advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If "we" advance payment to the "covered person" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**b.** If "we" make payment under this policy and the person to or for whom payment is made recov-ers from another, that person shall:

**1.** Hold in trust for "us" the proceeds of the recovery ; and

**2.** Reimburse "us" to the extent of "our" payment.

**1.** That payment will be separate from any amount the "covered person" is entitled to recover un-der the provisions of Uninsured Motorists Coverage; and

**2.** "We" also have a right to recover the advanced payment.

**B.** The following is added to the **Two or More Auto Policies** provision:

**TWO OR MORE AUTO POLICIES**

**1.** This provision does not apply to Uninsured Motorists Coverage.

**2.** No one will be entitled to receive duplicate payments for the same elements of loss under Unin-sured Motorists Coverage.

**C.** The following is added:

**LEGAL ACTION AGAINST US**

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against "us" for the recovery of any claim under this Part unless the "covered person" has satisfied all of the things that "covered person" is required to do under this policy and unless the lawsuit or arbitration is com-menced within two years from the date of the accident.

All other terms and conditions of this policy remain the same.

# LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to "you" and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of "your" fraudulent acts or omissions unless the loss results from "your" conversion, secretion, or embezzlement of "your covered auto". However, "we" reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. "We" will give the same advance notice of cancellation to the loss payee as "we" give to the named insured shown in the Declarations.

When "we" pay the loss payee "we" shall, to the extent of payment, be subrogated to the loss payee's right of recovery.

# ADDITIONAL INSURED - LESSOR

Any liability and any required no-fault coverages afforded by this policy for "your leased auto" also apply to the lessor named in the Declarations as an additional insured.  This insurance is subject to the following additional provisions:

1.  "We" will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

    a.  "You" or any "family member", or

    b.  Any other person except the lessor or any employee or agent of the lessor using "your leased auto".

2.  "Your leased auto" means:

    a.  An auto shown in the Declarations which "you" lease for a continuous period of at least three months under a written agreement which requires "you" to provide primary insurance for the lessor, and

    b.  Any substitute or replacement auto furnished by the lessor named in the Declarations.

3.  If "we" terminate this policy, notice will also be mailed to the lessor.

4.  The lessor is not responsible for payment of premiums.

5.  The designation of the lessor as an additional insured shall not operate to increase "our" limits of liability.

CPA-0319 (1/01)

# SPECIAL LARGE DEDUCTIBLE ENDORSEMENT

If "your" home and automobile(s) are both insured with The Cincinnati Insurance Companies and $500 (or higher) deductibles have been selected for both the home and automobile(s) the following deductible provision will apply and "you" **will receive an additional premium discount.**

In the event of a loss arising out of a single occurrence for which two or more $500 (or higher) deductibles would otherwise have been individually applied, only one deductible will be applicable. The largest deductible "you" have selected and which would otherwise apply to the loss would be the maximum deductible "we" would apply to the combined loss.

It is further understood and agreed any other property insured under this policy which provides for a $500 (or higher) deductible will also be subject to the provisions of this endorsement.

No deductible will apply to an occurrence resulting in a covered loss of $50,000 or greater. This provision does not apply to losses caused by earthquake.

**HOA-9000 (1/01)**