**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No: 3:06-CV-733-MHT** |
| | ) | |
| JOSEPH DONALD PRATHER and | ) | |
| LINDA PRATHER, | ) | |
| | ) | |
|     Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

COMES NOW Defendants, Joseph Donald Prather and Linda Prather, by and through

their counsel of record in the above style cause, and files this brief [1] in support of their motion to

dismiss the above-entitled action:

**STATEMENT OF THE CASE**

This declaratory judgment action seeks federal resolution of certain insurance coverage

issues arising from and pending in an ongoing state court lawsuit. On or about April 18, 2006,

Jason and Tracy Swader ("Swaders") filed suit in the Circuit Court of Chambers County,

Alabama, against Steven Bullard ("Bullard"), and Cincinnati Insurance Company ("Cincinnati").

---

[1] This brief closely follows the recent Order from the Honorable William H. Steele
regarding Doris Bailey's Motion to Dismiss or, in the Alternative, to Stay in Progressive
Specialty Ins. Co. v. Bailey, 2006 WL 2091749, *1(S.D.Ala. 2006). The Order in Bailey
perfectly outlined how district courts should rule on Declaratory Judgment actions when parallel
action are pending in state court.

The Swaders allege that, on or about February 3, 2006, the Swaders were passengers in the vehicle driven by the Bullard. Due to Bullard's negligent and/or wanton conduct the automobile operated by Bullard was caused to strike a tree, causing their injuries. The state court action remains pending in Chambers County Circuit Court at this time, where it bears the caption *Jason & Tracy Swader v. Steven Bullard, et al.,* CV-06-83 (the "*Swader* Action").

On or about May 22, 2006, Cincinnati filed an answer in the *Swader* Action. Concurrently with its answer, Cincinnati filed a Notice of Intent to Serve Subpeona on a Non-Party in the *Swader* Action. On or about August 14, 2006, almost four months after the *Swader* Action commenced, Cincinnati filed its Complaint for Declaratory Judgment in this District Court to commence this action. Named defendants include Joseph Donald Prather, and Linda Prather who was added by amended complaint filed on or about August 15, 2006. Donald and Linda Prather are the parents of Tracy Swader. Cincinnati contends that it does not owe the Swaders Uninsured/Underinsured Motorist Coverage in the *Swader* Action. Cincinnati claims several reasons that a justicible controversy has arisen concerning coverage to the Swaders under Defendant Prathers' insurance policy, and filed the Declaratory Judgment Action seeking a determination of the parties' rights, duties, status, and legal relationship under the policy of insurance issued by Cincinnati to Donald Prather and Linda Prather as it relates to coverage for the Swaders.

Defendants Donald Prather and Linda Prather filed a Motion to Dismiss on or about August 31, 2006, in which they argue that this Court should decline to exercise jurisdiction over Cincinnati's declaratory judgment action.

In an Order dated September 13, 2006, this Court ordered that the Motion to Dismiss was

set for submission of September 25, 2006.

On or about September 19, 2006, the Swaders filed an Amended Complaint in the Circuit Court of Chambers County. (See attached)  The Swaders added J. Smith Lanier & Co., Gains Lanier, and Holly Leverette to the *Swader* Action; the Swaders have alleged Breach of Contract, Bad Faith, Wilful Misrepresentation, Reckless Misrepresentation, Negligent Misrepresentation, Outrage, and Breach of Fiduciary Duty against all named and fictitious defendants.  Gains Lanier and Holly Leverette work as agents/employees of J. Smith Lanier & Co. and sold the policy in question to Donald Prather for Cincinnati.  Gains Lanier, Holly Leverette, and J. Smith Lanier & Co. reside and/or are located in Chambers County.

## STATEMENT OF THE FACTS

On or about February 3, 2006, the Swaders were passengers in a vehicle driven by Bullard.  Due to Bullard's negligence and/or wanton conduct the vehicle operated by Bullard, was involved in a single car accident.  Bullard was an uninsured/underinsured motorist.

At the time of said incident made the basis of the *Swader* Action, Donald Prather, the Swaders' father and father-in-law respectively, was engaged in a valid contractual relationship with the Cincinnati.   Donald Prather entered into the contract, purchased by and through J. Smith Lanier & Co., for medical pay benefits coverage and uninsured/underinsured motorist coverage, Policy Number A01 0134532.

The policy was sold to Donald Prather by Gains Lanier and Holly Leverette.  Gains Lanier and Holly Leverette, are agents/employees of J. Smith Lanier & Co.  The Swaders sought to procure an insurance policy from the Defendants and were advised the same was provided through Donald Prather's policy as the Swaders were designated insureds on Donald Prather's

policy because the Swaders' automobiles were covered under Donald Prather's policy.

The Swaders relied on the Defendants for medical pay benefits coverage and uninsured/underinsured motorist coverage. The Swaders did not seek out or obtain other insurance for medical pay benefits coverage or uninsured/underinsured motorist coverage because they relied on the coverage procured through said Defendants. Defendants have failed to pay said benefits despite continued attempts and requests for Defendants to pay said benefits. Defendants breached their agreement to pay benefits contracted for by the parties to the contract. Defendants accepted Donald Prather's premium payments and subsequently denied coverage to the Swaders under the valid insurance policy when the Swaders were injured in the aforementioned automobile accident.

The Swaders and Bullard are indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure as this action directly pertains to and affects their rights. Also after the filing of the amended complaint in the *Swader* Action, J. Smith Lanier & Co., Gains Lanier, and Holly Leverette are indispensable parties.

## SUMMARY OF THE ARGUMENT

The Supreme Court has made it clear on repeated occasions that a district court's decision to exercise jurisdiction over a declaratory judgment action is a matter committed to the sound discretion of the district court. Concerns that federal courts have a virtually unflagging obligation to exercise jurisdiction are irrelevant in the context of declaratory judgment actions because Congress, in creating the Declaratory Judgment Act, specifically gave district courts discretion concerning whether to hear such actions. Thus, the judicially-formed "exceptional circumstances" test set forth in Colorado River Water Conservation Dist. v. United States, 424

U.S. 800 (1976) and <u>Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1 (1983), which normally governs the determination of whether it is proper for a federal court to abstain from exercising its jurisdiction in a particular case, does not apply to declaratory judgment actions.

At least two prior holdings of the Supreme Court construing a federal court's discretionary exercise of its jurisdiction under the Declaratory Judgment Act compel the conclusion that the motion must be granted.  First, in cases like the instant one where the complaint for declaratory relief does nothing more than assert a defense to a pending state court action not involving a question of federal law, this Court, in <u>Public Service Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237 (1952), has indicated that a federal court should not entertain jurisdiction.  Second, in <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 495 (1942), the Supreme Court determined that a court should not ordinarily exercise its discretion to hear a declaratory judgment action where, as is the case here, there is another suit between the parties pending in state court that presents the same issues not governed by federal law.

The Supreme Court's rationale in <u>Brillhart</u> for allowing district courts broad discretion in determining whether to exercise jurisdiction in a declaratory judgment action had three principal bases:  (1) avoidance of having federal courts needlessly determine issues of state law; (2) discouraging litigants from filing declaratory judgment actions as a means of forum shopping; and (3) avoiding duplicative litigation.  Each of these factors support abstention here.  First, there is no dispute that this insurance coverage dispute is governed by state law.  Second, Cincinnati brought this action in an attempt to forum shop and that entertaining jurisdiction over this declaratory judgment action would reward Cincinnait's attempt to forum shop.  Third, declining

the exercise of jurisdiction in this case would avoid duplicative litigation. Thus, under both the holding and rationale of the Supreme Court's decision in <u>Brillhart</u>, this Court's decision to abstain from exercising its jurisdiction is entirely proper.

This Court, in fulfilling whatever obligation it may have to exercise jurisdiction, should not be deprived of the discretion to decline jurisdiction over a declaratory judgment action where, as here, the declaratory judgment action is instituted as a means of forum shopping, no issue of federal law is presented, the declaratory relief sought is nothing more than a defense to the state court action, and maintenance of two parallel suits would result in duplicative, piecemeal litigation.

## **LEGAL STANDARD**

Cincinnati's claims in this action were brought pursuant to 28 U .S.C. § 2201. Cincinnati filed the Declaratory Judgment Action seeking "a determining of the parties' rights, duties, status, and legal relationship under the policy of insurance issued by CIC to Don Prather and Linda Prather as it relates to coverage ..." (Complaint, ¶ 22). But it is well-settled that the Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995). Indeed, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." <u>Id.</u> at 287 (citations omitted). As the Eleventh Circuit recently observed, the Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328, 1330 (11th Cir. 2005). "The desire of insurance companies ... to receive declarations in federal court on matters of purely state law has no special call on the federal forum." <u>State Auto</u>

Ins. Companies v. Summy, 234 F.3d 131, 136 (3rd Cir. 2000); *see also* Prudential Ins. Co. of

America v. Doe, 140 F.3d 785, 789 (8th Cir. 1998) ("The Supreme Court's decision in *Wilton* ...

vests the district courts with broad discretion in deciding whether to hear a declaratory judgment

action.").

Consistent with the foregoing, it has long been recognized in this Circuit that a district

court has discretion to "decline to entertain a declaratory judgment action on the merits when a

pending proceeding in another court will fully resolve the controversy between the parties." Ven-

Fuel, Inc. v. Department of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982). Last year, the

Eleventh Circuit reinforced Ven-Fuel and furnished district courts with considerable guidance in

how to wield their discretion under the Declaratory Judgment Act where there are parallel state

proceedings. In Ameritas, the court emphasized that federalism, comity, and efficiency require

district courts to balance federal and state interests in determining how to exercise their

discretion to hear a declaratory judgment action when confronted with a parallel state action.

Amertitas, 411 F.3d at 1330-31. To assist district courts in this endeavor, the Ameritas court

promulgated a non-exhaustive set of "guideposts" to be considered, including: (i) the state's

interest in deciding the matter; (ii) whether a judgment in the federal action would completely

resolve the controversy; (iii) whether the declaratory judgment action would clarify the parties'

legal relations; (iv) whether the federal action is a form of "procedural fencing" being utilized "to

provide an arena for a race for *res judicata* or to achieve a federal hearing in a case not otherwise

removable"; (v) whether a ruling in the federal action would increase friction between federal and

state courts or otherwise encroach on state proceedings; (vi) whether a superior alternative

remedy exists; (vii) whether underlying facts are important to informed resolution of the matter;

(viii) whether the state court is better situated than the federal court to evaluate those facts; and

(ix) the nexus (if any) between the underlying issues and state law/policy, and whether federal common or statutory law requires resolution of the declaratory action. *See id.* at 1331; *see also* Lexington Ins. Co. v.. Rolison, --- F.Supp.2d ----, 2006 WL 1594151, *7-* 11 (S.D.Ala. May 17, 2006) (applying *Ameritas* guideposts in context of declaratory judgment action filed by insurer after entry of state court judgment against putative insured).

## ARGUMENT

I.    **This Court should dismiss Cincinnati's Complaint for Declaratory Judgment in favor of a parallel state court action, when the declaratory judgment action was instituted as a means of forum shopping, no issue of federal law is presented, the declaratory relief sought is nothing more than a defense to the state court action, and maintenance of two parallel suits would result in duplicative, piecemeal litigation.**

In applying the Ameritas Guidepost, this court should dismiss the action for declaratory judgment.  The Ameritas court promulgated a non-exhaustive set of "guideposts" to be considered.  When these nine guidepost are applied the facts here, the motion to dismiss is due to be granted.

A.    **Applying the *Ameritas* Guidepost illustrates that the Motion to Dismiss is due to be granted. [2]**

The first Ameritas factor concerns "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts."  Ameritas, 411 F.3d at 1331.  Alabama state courts undoubtedly have a substantial interest in deciding the issues raised in this lawsuit.  The underlying *Swader* Action is being litigated in an Alabama state court, and any ruling on Cincinnati's insurance coverage for the Swaders in this action may have profound implications for that state court litigation.  Moreover, this action concerns the proper

---

[2] *Bailey*, 2006 WL 2091749, 3(S.D.Ala. 2006) (applying the *Ameritas* guideposts).

interpretation of an insurance policy issued to an Alabama resident by an Alabama business (Cincinnati) in Alabama, and whether that policy extended coverage to Alabama citizens (Swaders). Alabama law will supply the rule of decision with respect to these questions. Under these circumstances, the State of Alabama has a considerable interest in deciding these coverage issues. *See* Lexington, 2006 WL 1594151, at 7 (determining that Alabama has substantial interest in deciding Alabama state law issues concerning interpretation of insurance contract issued to an Alabama business, with respect to an Alabama judgment).

Next, we examine "whether the judgment in the federal declaratory action would settle the controversy." Ameritas, 411 F.3d at 1331. This question is unequivocally answered in the negative. Cincinnati's declaratory judgment action encompasses only a fraction of the legal issues that have been joined in the *Swader* Action, and would in no way address or resolve any of Swader's claims against Bullard, J. Smith Lanier & Co., Gains Lanier, Holly Leverette, or anybody else. After this Court adjudicated the coverage issues animating this declaratory judgment action, and irrespective of the manner in which those issues were decided, the Chambers County Circuit Court would be left to implement that ruling and address the merits of Swader's claims against Bullard, J. Smith Lanier & Co., Gains Lanier, and Holly Leverette. By contrast, both the coverage issues and the issues of Bullard's liability are pending before the state court in the same proceeding. Allowing the Chambers County Circuit Court to address all of those issues would avoid the fragmented, piecemeal litigation that Cincinnait seeks to impose via its declaratory judgment action. Clearly, this factor favors abstention.

Third, the Court must consider "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue." Id. There can be no serious question that determining whether the Swader are "insureds." for purposes of the Cincinnati policy would

bring the parties' legal relations into sharper relief. Of course, the pending declaratory claims in the *Swader* Action place the state court in an equally advantageous position to clarify the parties' legal relations. The question is not whether the Cincinnait-Swader legal relationship will or will not be clarified. It undoubtedly will. The question is whether this Court or the Chambers County Circuit Court will be the one to do the clarifying. As such, while this factor militates in favor of exercising jurisdiction, it does so only weakly.

The fourth factor identified by Ameritas is "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing'--that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable." Id. Cincinnati has attempted to seal off Swader's access to a state forum for these coverage issues. Such conduct falls fairly within this Court's definition of "procedural fencing" for Ameritas purposes. This approach does violence to the principles enunciated in Ameritas, as well as the rationale of the Supreme Court in Brillhart and Wilton. For these reasons, the "procedural fencing" factor favors declination of federal jurisdiction here.

Fifth, Ameritas counsels district courts to consider "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction." Ameritas, 411 F.3d at 1331. It would. If this Court asserted jurisdiction, that decision might effectively force the Chambers County Circuit Court to hold the *Swader* Action in suspended animation while awaiting a ruling from this Court as to whether Cincinnati must furnish coverage to the Swaders. Needless to say, wresting legal issues away from the state court, obliging it to stand idly by until this Court rules on those issues, and then expecting it to implement this Court's rulings (whether it agrees with them or not) is a recipe for undue encroachment and heightened friction. In that event, a veritable footrace would ensue between

federal and state courts to resolve the issues first, with the faster court's disposition becoming

binding on the slower court's through the alchemy of *res judicata.* Nothing good can come from

such an arrangement, so this guidepost also points unwaveringly in the direction of abstention.

The sixth <u>Ameritas</u> factor calls for consideration of "whether there is an alternative

remedy that is better or more effective." <u>Ameritas,</u> 411 F.3d at 1331. In the posture of this case,

litigating the coverage issue in the *Swader* Action exclusively is a vastly superior remedy to

conducting double-tracked litigation in two courts. Unquestionably, Cincinnati can fully litigate

its claims for declaratory judgment against the Swaders in the existing Chambers County Circuit

Court proceedings, with both coverage and liability issues to be decided by the same court in an

integrated manner without federal interference. This alternative is clearly better and more

effective.

Combining the seventh and eighth <u>Ameritas</u> factors, the Court examines "whether the

underlying factual issues are important to an informed resolution of the case" and, if so, "whether

the state trial court is in a better position to evaluate those factual issues than is the federal court."

<u>Id.</u> Both of these questions are answered in the affirmative. The heart of this declaratory

judgment action is Cincinnait's claim that the Swaders are not covered for the accident made the

basis of this and the state court action. The Chambers County Circuit Court will already be

examining the facts in connection with the Swaders' claims against Bullard, so that court would

not need to review them anew to resolve Cincinnati's insurance coverage issues. Rather than

having two courts duplicate effort in scrutinizing and assessing the underlying facts, a far more

sensible and efficient approach is for the state court that is already tasked with examining those

facts in the underlying case to apply those same facts to the pending claims for declaratory relief.

In the ninth and final guidepost, <u>Ameritas</u> directs district courts to consider "whether

there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." Id. This factor unambiguously weighs in favor of abstention. Cincinnati's Complaint raises exclusively state law issues and implicates exclusively state law public policies, with no reference whatsoever to federal common or statutory law.

Considered collectively, the Ameritas guideposts weigh heavily in favor of abstention. This declaratory judgment action turns on Alabama state law issues relating to whether Cincinnati's insurance policy provides coverage to the Swaders in connection with certain state-law claims brought in an Alabama state court concerning events that occurred between Alabama residents. All of the legal and factual issues raised by Cincinnati in this action against the Swaders are also at issue in the currently pending Chambers County action. These points support abstention. See Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 390-91 (5th Cir. 2003) ("if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit"); ITT Industries, Inc. v. Pacific Employers Ins. Co., 427 F.Supp.2d 552, 561 (E.D.Pa. 2006) (describing wasteful, inefficient outcome if both federal court and state court ruled on parallel actions, with duplication, piecemeal resolution of issues, and encroachment on other proceedings). As one appellate court sagely put it, "[i]t hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed on parallel tracks." Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992). What's more, this action cannot completely and finally resolve this dispute, but will leave various issues for resolution in the Chambers County action irrespective of the outcome of the declaratory issues in federal court.

That kind of piecemeal litigation, and the ensuing friction, gratuitous interference, and unease between state and federal courts confronted with precisely the same issues presented by the same litigants, counsels against exercising jurisdiction here. *See* <u>Ameritas</u>, 411 F.3d at 1332 (finding that allowing declaratory judgment action to proceed would amount to gratuitous interference with more encompassing, currently pending state court action); <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 257 (4th Cir. 1996) ("at least where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed") (citations omitted).

In short, taking to heart <u>Wilton's</u> concerns of "practicality and wise judicial administration," the Court finds that those virtues would be poorly served by retaining jurisdiction here, inasmuch as the same exclusively state law issues presented in this case are presently being litigated by the same parties in a parallel state court proceeding, this action includes only a subset of the matters being litigated in the state court, and this action has been invoked by Cincinnati in a strategy to freeze coverage issues out of the state court proceeding. Furthermore, it appears that all parties to this action will have full and adequate recourse to litigate all legal issues presented herein in the *Swader* Action. *See* <u>Wilton</u>, 515 U.S. at 283 (suggesting that abstention determination ought to consider whether claims of all parties in interest can satisfactorily be adjudicated in state court proceeding). For all of these reasons, the Court should decline to exercise jurisdiction.

**B.**    **<u>After considering the *Ameritas* guidepost, the only question that remains, is whether this Court should dismiss or stay the action for declaratory judgment?</u>**

-13-

Having determined that <u>Wilton</u> discretion is in play, and having applied the <u>*Ameritas*</u> guideposts to conclude that abstention will promote the interests of practicality, comity and efficient, wise administration of justice, the Court should decide to dismiss this action.

Having determined that <u>Wilton</u> discretion is in play, and having applied the <u>Ameritas</u> guideposts to conclude that abstention will promote the interests of practicality, comity and efficient, wise administration of justice, the Court now must decide whether to dismiss or stay this action.

In <u>Wilton</u>, the Supreme Court observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." <u>Wilton</u>, 515 U.S. at 288 n. 2; *see also* <u>Gatewood Lumber, Inc. v. Travelers Indem. Co.</u>, 898 F.Supp. 364, 369 (S.D.W.Va. 1995) (staying declaratory judgment action, rather than dismissing it under *Wilton*, "to alleviate the risk of a possible time bar to otherwise viable causes if the State action fails to resolve all matters in controversy"). However, numerous courts engaging in abstention pursuant to <u>Brillhart</u> and <u>Wilton</u> have instead elected to dismiss the declaratory action without prejudice. *See, e.g.,* <u>Ameritas</u>, 411 F.3d at 1332 (finding no abuse of discretion in district court's decision to dismiss declaratory judgment action in favor of parallel state court action); <u>Summy</u>, 234 F.3d at 136 (vacating district court's decision to exercise jurisdiction over declaratory judgment action and remanding with instructions that the complaint be dismissed pursuant to *Wilton*); <u>Poston</u>, 88 F.3d at 258 (affirming dismissal of declaratory judgment action without prejudice where parallel state court action contained defendant and issues not present in federal action); <u>St. Paul Fire & Marine Ins. Co. v. Johnson Homes of Meridian, Inc.</u>, 2005 WL 2739141, *10 (S.D.Ala. 2005) (abstaining from hearing

declaratory judgment action in favor of parallel state court proceeding and dismissing declaratory judgment action).

Dismissal is warranted here for two reasons. First, in contrast to the concerns articulated in <u>Wilton</u> and <u>Gatewood</u>, no party has suggested that there would be any reasonable risk of a time bar in the *Swader* Action with respect to Cincinnati's claims asserted here, so as to render a stay appropriate. Second, if this action were stayed, perverse incentives might be created for Cincinnati to waylay the Swaders' complaint in the *Swader* Action in hopes that it might be able to litigate those coverage issues in federal court after the stay is lifted. Thus, granting a stay could conceivably yield the type of forum-shopping and piecemeal litigation that *Wilton/Brillhart* abstention was designed to prevent. Based on these considerations, and in the absence of countervailing argument by the parties, this action should be dismissed, rather than stayed.

## CONCLUSION

For all of the foregoing reasons, Defendants Donald Prather and Linda Prather's Motion to Dismiss should be **granted.** This action should be **dismissed without prejudice** pursuant to <u>Wilton/Brillhart</u> abstention, to enable the parties to litigate all issues pertaining to this dispute in the parallel lawsuit currently pending in Chambers County Circuit Court.

Respectfully submitted,

s/ Timothy L. Dillard
Dillard and Associates, L.L.C.
Attorneys for Defendants
The Berry Building, Suite 400
2015 Second Avenue North
Birmingham, Alabama 35203

-15-

## CERTIFICATE OF SERVICE

I hereby certify that on this the  22nd  day of  September , 2006, I have served a copy of the above on all parties of record, by United States Mail, first class, postage prepaid and properly addressed.

**Jennifer T. Dewees**
2001 Park Place North, Suite 911
Birmingham, Alabama 35203

**Steven Bullard**
3305 21st Avenue
Valley, AL 36854-3138

**Gains Lanier**
1118 North 18th Street
Lanett, Alabama 36863

**Holly Leverette**
707 Avenue A
Opelika, Alabama 36801

**J. Smith Lanier & Co.**
c/o Tom Botsford
707 Avenue A
Opelika, Alabama 36801

s/ Timothy L. Dillard
Of Counsel

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | | |
|---|---|---|
| **JASON SWADER, an individual, and** | ) | |
| **TRACY SWADER, an individual** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No: CV 06-82** |
| | ) | |
| **STEVEN BULLARD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Comes now the Plaintiffs, by and through counsel of record, in the above style cause and amends the Complaint by adding the additional defendants and additional claims as follows:

22.   The Plaintiffs adopt and re-allege all of the averments of the original Complaint (see attached) and further avers:

23.   Plaintiffs add Gains Lanier as a Defendant to the Complaint already filed in this cause of action.  Defendant Gains Lanier is over the age of nineteen (19) and is a resident of Chambers County, Alabama.

24.   Plaintiffs add Holly Leverette as a Defendant to the Complaint already filed in this cause of action.  Defendant Holly Leverette is over the age of nineteen (19) and is a resident of Chambers County, Alabama.

25.   Plaintiffs add J. Smith Lanier & Co. as a Defendant to the Complaint already filed in this cause of action.  The Defendant, J. Smith Lanier & Co. , is a corporation located and doing business in Chambers County, Alabama.

26.   Plaintiffs add the additional claims:

## Count Eight

## Breach of Contract

27.    The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

28.    At the time of said incident made the basis of this Complaint, Donald Prather, Plaintiffs'

father and father-in-law respectively, was engaged in a valid contractual relationship with

the Defendant, Cincinnati Insurance Company.  Donald Prather entered into the contract,

purchased by and through Defendant J. Smith Lanier, for medical pay benefits coverage

and uninsured/underinsured motorist coverage, Policy Number A01 0134532.

29.    The policy was sold to Donald Prather by Defendants, Gains Lanier and Holly Leverette.

Defendants, Gains Lanier and Holly Leverette, are agents/employees of Defendant J.

Smith Lanier & Co.

29.    Plaintiffs sought to procure an insurance policy from Defendants and was advised the

same was provided through Donald Prather's policy as Plaintiffs were designated

insureds on Donald Prather's policy because Plaintiffs' automobiles were covered under

Donald Prather's policy.  Plaintiffs aver that they relied on the Defendants for medical

pay benefits coverage and uninsured/underinsured motorist coverage.

30.    Plaintiffs aver that they did not seek out or obtain other insurance for medical pay

benefits coverage or uninsured/underinsured motorist coverage because they relied on the

coverage procured through said Defendants.

30.    Defendants have failed to pay said benefits despite continued attempts and requests for

Defendants to pay said benefits.

31.    Defendants breached their agreement to pay benefits contracted for by the parties to the

contract. Defendants accepted Donald Prather's premium payments and subsequently

denied coverage to the Plaintiffs under the valid insurance policy when the Plaintiffs were

injured in the aforementioned automobile accident.

32.    The agreement entered into as described in paragraph twenty-eight (28) herein was a legal

contract between the parties. The Defendants have breached said contract by taking

actions to alter its nature that was neither bargained for nor agreed to by the Parties. The

Defendants breached that duty by failing to provide medical pay benefits coverage and

uninsured/underinsured motorist coverage.

33.    As a direct and proximate result of the Defendants', both named and fictitious, actions the

Plaintiffs have been injured as follows:

> **The Plaintiffs, Jason Swader and Tracy Swader, were
> defrauded and/or intentionally, recklessly, and/or
> negligently lied to; the Plaintiffs lost money paid to the
> Defendants and has incurred greater debt as a result of the
> Defendants' negligence, the Plaintiffs have suffered
> financial distress; the Plaintiffs have suffered mental and
> emotional anguish.**

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

### Count Nine

### Bad Faith

33.    The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

34.    The Plaintiffs and Defendants, both named and fictitious, were engaged in an insurance

contract that obligated the Defendants to pay the Plaintiffs' claim.

35.   The Defendants, both named and fictitious, refused to pay the Plaintiffs' claim for no

reasonably legitimate reason with knowledge that there was no reasonably legitimate

reason for not paying the Plaintiffs' claim.

36.   As a direct and proximate result of the Defendant's bad faith, the Plaintiffs were injured

as alleged in paragraph thirty-three (33) above.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

## Count Ten

## Willful Misrepresentation

37.   The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

38.   The Defendants, both named and fictitious, willfully misrepresented the fact that they

would provide insurance coverage to the Plaintiffs after payments of premiums.  Instead,

Defendants accepted Donald Prather's premium payments and subsequently denied

coverage to the Plaintiffs under the valid insurance policy when the Plaintiffs were

injured in the aforementioned automobile accident.

39.   As a direct and proximate result of the Defendants' willful misrepresentation, the

Plaintiffs have been injured and damaged as stated in paragraph thirty-three (33) above.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

## Count Eleven

### Reckless Misrepresentation

40.    The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

41.    The Defendants, both named and fictitious, recklessly misrepresented the fact that they

would provide insurance coverage to the Plaintiffs after payments of premiums.  Instead,

Defendants accepted Donald Prather's premium payments and subsequently denied

coverage to the Plaintiffs under the valid insurance policy when the Plaintiffs were

injured in the aforementioned automobile accident.

42.    As a direct and proximate result of the Defendants' reckless misrepresentation, the

Plaintiffs have been injured and damaged as stated in paragraph thirty-three (33) above.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

### Count Twelve

### Negligent Misrepresentation

43.    The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

44.    The Defendants, both named and fictitious,  mistakenly or negligently misrepresented the

fact that they would provide insurance coverage to the Plaintiffs after payments of

premiums.  Instead, Defendants accepted Donald Prather's premium payments and

subsequently denied coverage to the Plaintiffs under the valid insurance policy when the

Plaintiffs were injured in the aforementioned automobile accident..

45.   As a direct and proximate result of the Defendants' mistaken or negligent

misrepresentation, the Plaintiffs have been injured and damaged as stated in thirty-three

(33) above.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

### Count Thirteen

### Outrage

46.   The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

47.   The Plaintiffs and Defendants, both named and fictitious, were engaged in a agreement by

the terms of which the Defendants provided the Plaintiffs with insurance coverage for

their automobile for said consideration of payment of insurance premiums.  Instead,

Defendants accepted Donald Prather's premium payments and subsequently denied

coverage to the Plaintiffs under the valid insurance policy when the Plaintiffs were

injured in the aforementioned automobile accident.

48.   The foregoing actions by Defendants constitute conduct so outrageous in character and so

extreme in degree that it goes beyond all possible bounds of decency.

49.   As a direct and proximate result of this conduct the Plaintiffs suffered emotional distress

so severe that no reasonable person could be expected to endure it.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

## Count Fourteen

## Breach of Fiduciary Duty

50.    The Plaintiffs adopt and re-incorporate all preceding paragraphs of the original

complaint and further avers that:

51.    The Defendants, both named and fictitious, owed the Plaintiffs a fiduciary duty, as a

client and/or customer of said Defendants, to provide Plaintiffs with automobile

insurance coverage in exchange for payments of insurance premiums paid by the

Plaintiffs.

52.    The Defendants, both named and fictitious, breached their fiduciary duty by defrauding

the Plaintiffs by negligence, wantonness, intentional misrepresentation, reckless

misrepresentation, and negligent misrepresentation.

53.    As a direct and proximate result of the Defendants' breach of fiduciary duty, the Plaintiffs

have been injured and damaged as stated in paragraph thirty-three (33) above.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

Plaintiffs further aver that all Defendants, both fictitious and named, are guilty of the

above-described causes and/or theories of recovery in a joint and several fashion and each count

of the Complaint and Amended Complaint is intended to apply to each of the fictitious and

named Defendants to the extent it is applicable to same.

WHEREFORE, the Plaintiffs demand judgement of the Defendants in an amount in

excess of FIFTY THOUSAND DOLLARS ($50,000.00) in compensatory and punitive damages

to be determined by a struck jury, plus interest and costs of court.

DILLARD & ASSOCIATES, L.L.C
Attorneys for Plaintiffs

Timothy L. Dillard (DIL003)
The Berry Building, Suite 400
2015 Second Avenue North
Birmingham, Alabama 35203

**TRIAL COUNSEL:**
Timothy L. Dillard (DIL 003)
Stewart S. Wilbanks (WIL 312)

## ** PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Attorney for Plaintiff

**DEFENDANT'S ADDRESS:**                    (Please serve by certified mail)

**Gains Lanier**
1118 North 18th Street
Lanett, Alabama 36863

**Holly Leverette**
707 Avenue A
Opelika, Alabama 36801

**J. Smith Lanier & Co.**
c/o Tom Botsford
707 Avenue A
Opelika, Alabama 36801

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___ day of _September_, 2006, I have served a copy of the above on all parties of record, by United States Mail, first class, postage prepaid and properly addressed.

**Jennifer T. Dewees**
2001 Park Place North, Suite 911
Birmingham, Alabama 35203

**Steven Bullard**
3305 21st Avenue
Valley, Alabama 36854-3138

Of Counsel